## Commonwealth v. Woodward

Burton R. Laub, assistant district attorney, for Commonwealth.

Bernard T. Foley, for defendant.

Waite, P. J. O. C., specially presiding, October 7, 1932.—The Act of April 29, 1929, P. L. 854, under which this defendant has been tried and convicted, is

known as the Habitual Criminal Act of Pennsylvania. As this, so far as the court has been able to ascertain, is the first case tried under the act in Pennsylvania, it may not be amiss to briefly review the history and purpose of such legislation.

Experience has shown that the same offenders are tried and convicted time after time; that after a second or subsequent conviction they seldom show any purpose or desire to become useful, law-abiding citizens. Not only is the State repeatedly put to the trouble and expense of apprehending and trying them, but they often become a menace to the life and property of the individual and to the safety and welfare of society itself. The records show that many of the most atrocious crimes, including rape, robbery, burglary, arson, kidnapping and murder, are planned and carried out by habitual criminals. It is true that some first and even second offenders do reform and become useful, law-abiding citizens; these deserve every commendation. But such cases are very unusual after a third or subsequent conviction. Based upon this experience, habitual criminal acts have been enacted by many of the states. These laws have been attacked from every angle, but their constitutionality under both the State and Federal Constitutions has been uniformly upheld and their effectiveness in reducing crime clearly demonstrated.

The Pennsylvania law is less severe than those of some other states, where all felonies, as well as violations of the National Prohibition Acts, are included as prior offenses. Under the Pennsylvania act, only the more serious felonies are included. In some jurisdictions, after conviction, sentence to life imprisonment is imperative, while in Pennsylvania it is left to the discretion of the court and is reviewable on appeal.

It is a well-known fact that only a small percentage of criminals, even those of a most desperate character, are apprehended, tried and convicted. The late Governor Hadley, in "The Missouri Crime Survey," says:

"Stated in terms of percentages, the result is that our system of apprehending and prosecuting those guilty of criminal offenses is only from 5 per cent. to 10 per cent. efficient; considering those apprehended and indicted for major offenses, it is only from 25 per cent. to 30 per cent. efficient; and including those tried for major offenses, about 50 per cent. efficient. Such figures, stated in the abstract, oftentimes mean little to a casual reader, but if he should stop to consider a similar result in the conduct of a business such as banking, transportation or manufacturing with a percentage of efficiency from only 5 per cent. to 50 per cent., he could more clearly realize the seriousness of the problem that confronts society today, depending as it does for the protection of life and property upon a system of apprehending and prosecuting violators of the law which is from 50 per cent. to 95 per cent. inefficient."

It has been authoritatively stated that crime directly and indirectly causes this country every year a loss of thirteen billion dollars; a sum so stupendous as to be almost beyond comprehension. This cost exceeds one hundred dollars per year for every man, woman and child in the country.

Previous convictions cannot be assumed. If denied or not admitted, they must be proved. Every person, even though an alleged habitual criminal, put on trial under our laws is presumed to be innocent. He must be proven guilty beyond a reasonable doubt. He is entitled to a fair and impartial trial, free from either sympathy or prejudice. These are his absolute rights, whether innocent or guilty. The State demands this for him. It is the duty of his counsel to see to it that his client is protected in these rights. Beyond that, neither defendant nor his attorney has any right to go. Attorneys must not forget that as officers of the court they owe a duty to the State as well as to

their client. Technical and unnecessary delays and continuances and all other unfair tactics and practices must cease. Time for taking appeals should be shortened and all appeals promptly heard and decided.

Punishment as a deterrent for crime depends upon the promptness and certainty with which it is imposed, rather than upon its severity. Imprisonment for crime has a threefold purpose: First, punishment of the offender; second, as an example to others, and; third, and most important, the protection of society. The time has come when the rights of society, especially against the habitual criminal, must be safeguarded. Racketeering and all other forms of organized crime must be fought fearlessly and aggressively. Those who have repeatedly shown that they have no respect nor regard for the property, safety or lives of others, who are at war with and a constant menace to society, must be restrained. This is the cause of the habitual criminal laws. Their purpose is the protection of society.

On August 8, 1932, Mortimer E. Graham, District Attorney of Erie County, pursuant to the Act of Assembly of April 29, 1929, P. L. 854, entitled "An act authorizing the sentencing of persons convicted for a second or subsequent offense of certain crimes to additional prison terms and to imprisonment for life," presented to the court an information accusing Lawrence Woodward, alias Larry Woodward, alias Lawrence Boyle, alias Larry Green, of five previous convictions, to wit:

"1. Of the crime of (breaking and) entering with intent to steal, at February Term, 1932, No. 111, Court of Quarter Sessions of Erie County, Pa., and upon which conviction he was sentenced on May 11, 1932, to from two to four years in the Allegheny County Workhouse.

"2. Of the crime of (breaking and) entering with intent to steal, February Term, 1925, No. 23, Court of Quarter Sessions of Erie County, Pa., upon which conviction he was sentenced and confined continuously in the Western State Penitentiary, a penal institution, from February 14, 1925, to November 14, 1929.

"3. Of the crime of (breaking and) entering with intent to steal, September Term, 1919, No. 19, upon which conviction he was sentenced on September 11, 1919, for a period of three years and nine months to seven years in the Western State Penitentiary.

"4. Of the crime of burglary in the third degree in Chautauqua County of the State of New York on November 24, 1915, upon which conviction he was sentenced to serve a term of two years and five months in the Auburn State Prison in the State of New York.

"5. Of the crime of perjury in Chautauqua County, State of New York, and was sentenced on December 8, 1913, to a term of ten months in the Elmira Reformatory."

Proof was duly made of service of this information upon said defendant at the Allegheny County Workhouse on August 11, 1932. On September 20, 1932, said offender was brought before the Court of Quarter Sessions of Erie County, Pa., being the court in which the last conviction was had, and he was informed by the court of the allegations contained in said information. He was warned that he was in jeopardy and further informed of his right to be tried before a jury, according to law, as to the truth of the allegations contained in said information. The court then required said defendant to say whether or not he was the same person charged with the several convictions set forth in the information. The defendant refused to answer, and thereupon, by direction of the court, a plea of not guilty was entered. A jury was impaneled to inquire whether this offender is the same person mentioned in the several previous convictions set forth in said information.

In presenting the case to the jury, the court charged, inter alia:

"You will have to make up a special verdict. For your convenience, the district attorney has prepared a form which you may use in making up your verdict, in which you will say whether or not this defendant is the same person charged in this information as to each of the previous convictions there set forth, and also as to whether the crime of burglary in the third degree in the State of New York is an offense of the same character as breaking and entering with intent to steal in Pennsylvania."

The jury returned the following verdict:

"We, the jury sworn and empaneled in the above entitled case to determine whether or not the defendant in said case is the same person accused by the District Attorney of Erie County, Pa., in the accusation accusing of previous convictions filed in this case, find that the defendant in this case is the same person as the one accused in the information accusing of previous convictions in this case. And so say we all. Yes."

That the defendant on trial was the same person indicted, tried, sentenced and imprisoned under the first three previous convictions set forth in the information, all taking place in Erie County, Pa., was admitted by the defendant; the only denials related to the fourth and fifth convictions set forth in the information taking place in the State of New York, one being perjury and the other burglary in the third degree.

On September 22, 1932, a motion for a new trial was presented on behalf of the defendant, setting forth the following reasons: (1) Because the verdict was against the evidence; (2) because the verdict was against the weight of the evidence; (3) because the court erred in its charge to the jury; (4) because the court erred in admitting evidence which should not have been admitted.

None of these reasons, except the fourth, alleging error in the admission of evidence, was urged at the argument. The other reasons are without merit and are, therefore, dismissed.

Under the fourth reason it was urged that the court erred (1) in the admission of the record of the two convictions in the State of New York; (2) in the admission of testimony relative to the identity of the defendant, including the fingerprint records in the State of New York and in Pennsylvania, and the expert testimony relative thereto, and (3) the admission in evidence of the testimony of Burton R. Laub, Assistant District Attorney of Erie County, relative to the admissions made by the defendant to him in the Erie County Jail just preceding the last trial in Erie County.

In our opinion, none of these reasons can be sustained. The records from the State of New York were shown to be public records and documents, officially taken and kept, and were produced by the Clerk of the Court of Chautauqua County, N. Y., and by Mr. Tuffs, Deputy Keeper of Records of the State of New York, who are the official custodians of the records and documents produced. Under such circumstances, there can be no doubt as to their competency, relevancy and admissibility. In State v. Bolen, 142 Wash. 653, 254 Pac. 445, it was held that where the making of a record is an official act, there is a presumption of authenticity in the record and it is admissible without extrinsic testimony identifying the records. In that case, War Department records of fingerprints were held admissible as being required by law and being official acts presumed to be properly performed. See, also, State v. Torello, 103 Conn. 511.

Nor can there be any question as to the admissibility of the fingerprint records taken, kept and produced by Mr. Christoph, Captain of Detectives of the City of Erie, and duly offered in evidence. The qualifications of both Mr.

Tuffs and Mr. Christoph as experts were fully established. The competency and admissibility of a comparison of fingerprints for the purpose of proving identity in a criminal case, together with the records thereof, has been repeatedly upheld. In Com. *v.* Albright, 101 Pa. Superior Ct. 317, 321, the court said:

"We do not think it necessary to go into detailed discussion of the facts on which the science of identification by means of fingerprint impressions is based. Its accuracy and reliability are too well established to require elaborate confirmation at this time by the courts of this State. It is well settled that the papillary lines and markings on the fingers of every man, woman and child possess an individual character different from those of any other person and that the chances that the fingerprints of two different persons may be identical are infinitesimally remote."

In State *v.* Bolen, supra, it was held that documentary evidence required by law to be kept by a public official is admissible in evidence and that its admission does not violate the right of the accused to cross-examine and confront witnesses.

In the case at bar, the records produced by the witness Tuffs and identified by him were shown by his testimony to be records which were required by the laws of the State of New York to be kept in the office in which he is a deputy, and it was further proven by his testimony that the custody and control of said records were jointly in him as such deputy. The same may be said of the records produced by the clerk of Chautauqua County, N. Y.

In People *v.* Darling, 68 Cal. App. 595, 7 Pac. (2d) 1094, it was held that copies of fingerprint records from another state introduced to show prior convictions are admissible where they are accompanied by a certificate of the official custodian of said records, when said certificate shows on its face that the person making the certificate is the official custodian. See, also, People *v.* Reese, 258 N. Y. 89, 179 N. E. 305. In the instant case, the Commonwealth went even further and produced the actual custodians, who tesitfied on the witness stand.

As to the propriety, competency and admissibility of the testimony of the assistant district attorney, Laub, relative to a statement by the defendant admitting that he had been tried and convicted of the crimes of perjury and burglary in the third degree in the State of New York, whether we term defendant's statement an admission or a confession, there can be no doubt. The statement of the defendant was voluntarily made and no inducements whatever were held out to him by Mr. Laub. In Com. *v.* Mosler, 4 Pa. 264, 265, quoted and approved in Com. *v.* Dilsworth, 289 Pa. 498, 505-506, the court said:

" 'A confession to a constable, as well as to a private person, must be unattended with any inducement of hope or fear, and it must not be founded on a question calculated to entrap the prisoner . . . but in no case has it been ruled that such a confession must be preceded by an admonition to put the prisoner on his guard . . . that [is] not . . . necessary . . . [it is] sufficient that no inducement [is] held out by the constable.'

"This old decision is cited in the very recent case of Com. *v.* Cavalier, 284 Pa. 311, 315. See, also, McClain *v.* Com., 110 Pa. 263, 270, where a witness for the State testified he had asked the prisoner, 'How did it come that you killed that fellow?' and the prisoner gave an incriminating reply. We ruled that the testimony was 'competent and rightly admitted.' We also intimated in this last case that the defendant is amply protected when he has an opportunity for 'a full cross-examination as to all that occurred when the confession was made.' "

It was also urged on the argument for a new trial that the Act of April 29, 1929, P. L. 854, commonly known as the Habitual Criminal Act of Pennsylvania, under which this proceeding was brought, in the enumeration of the felonies upon the fourth or subsequent commission of which the sentence of life imprisonment may be imposed, does not specify or include the crime of burglary in the third degree, one of the felonies for which the defendant was tried and convicted in the State of New York, and included in the information by the district attorney in this case. It is true that "burglary in the third degree" is not specifically mentioned in the act, but we cannot agree that this offense is not embraced in the act, although not specifically named. "Entering with intent to steal" is one of the felonies set forth in the act. This offense seems to be identical with the one set forth in the indictment charging this defendant with burglary in the third degree in the State of New York. The language of the said indictment is, in part, as follows:

That "said Lawrence Woodward . . . feloniously and burglariously did break and enter," etc., . . . "with intent . . . to steal," etc.

Said indictment was offered in evidence and the question as to whether the offense therein named was the same as the offense of (breaking and) "entering with the intent to steal" specifically set forth in the statute under which the defendant was being tried, was submitted to the jury for their determination, together with the question of the defendant's identity, and their answer was "yes."

Moreover, it is not necessary that the former convictions set forth in the information shall be felonies identically so named as the felonies set forth in the said Habitual Criminal Act. Section two of that act provides:

"A person who, after having been three times convicted, within or without this Commonwealth, of crimes of the character above set forth, or of attempt to commit any such crimes, shall, upon conviction of any such crimes for a fourth or subsequent offense," etc.

The crime set forth in the indictment is not only of the same "character," but we may say is identical with the crime of (breaking and) entering with intent to steal set forth in the Pennsylvania act.

We, therefore, conclude that both from the findings of fact by the jury and from the wording of the act itself, this reason for a new trial is without merit.

Even if this offense were not included, there are still four other previous convictions as required by the act.

The verdict of the jury finds that the defendant has been previously convicted not only four times, as required by the Habitual Criminal Act, but five times, as set forth in the information. The jury evidently was convinced that the defendant on the stand committed the additional crime of perjury for the second time. Perjury is one of the greatest hindrances to the administration of justice in the civil, as well as the criminal, courts. Although not a felony directly endangering life and property, indirectly it may often do so. It is an insidious crime seriously interfering with the proper administration of justice and thereby striking at the very foundations of society itself. The crimes of breaking and entering with intent to steal are also felonies of a nature dangerous to society and frequently resulting in murder.

The defendant was fairly tried. The finding of the jury was justified by the evidence. In our opinion, no sufficient reason has been advanced warranting the granting of a new trial.

And now, to wit, October 7, 1932, for the reasons herein set forth, the motion for a new trial is refused.　　　　From Otto Herbst, Erie, Pa.