Commonwealth *v.* Carter, Appellant.

Argued June 9, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before CARROLL, P. J.

*Herbert L. Maris,* with him *Lawrence Goldberg,* for appellant.

*Juanita Kidd Stout,* Assistant District Attorney, with her *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY HIRT, J., September 11, 1958:

The defendant on October 9, 1956 was convicted by a jury on an indictment charging possession and sale of a narcotic drug in violation of the Act of July 11, 1917, P. L. 758, as amended, 35 PS §851, et seq. Motions in arrest of judgment and for a new trial were promptly filed but on July 3, 1957 both applications were "withdrawn at Bar"—VINCENT A. CARROLL presiding, who was the judge before whom the defendant had been tried and convicted. Thereupon the court immediately, following the withdrawal of the motions, announced that he would defer sentence and the record in this case, under date of July 3, 1957, contains this notation, "Sentence deferred". By this order the court reserved the power to sentence the defendant at a future date, and certainly under the rule of *Commonwealth ex rel. Holly v. Ashe,* 368 Pa. 211, 82 A. 2d 244, the power persisted until it becomes *functus* by the sentence of the defendant, although more than six months later, on January 24, 1958. There is nothing in this record which even remotely supports the bald assertion of defendant's counsel in the motion for a new trial that Judge CARROLL had said that he would discharge

the defendant if the motion for a new trial was withdrawn. Counsel's statement to the above effect is in line with his conduct throughout the trial which cumulatively evidences a low conception of the degree of "good fidelity to the court" which counsel is bound to observe. Even if counsel's position were correct, his remedy was not by way of appeal but rather by an application to reinstate the motion for a new trial. Under the circumstances however we consider it appropriate to discuss the questions raised by appellant if only to demonstrate that this was a valid sentence and that the penalty imposed was proper, in the light of defendant's past criminal record which includes at least two violations of the above anti-narcotics Act.

The conviction rests principally upon the testimony of officer Wilbur Davis of the Philadelphia Police Department who testified that in plain clothes, and assuming the role of a drug addict, he was doing undercover work, primarily for the Federal Bureau of Narcotics; that in the afternoon of July 15, 1955, he had with him in his automobile one Andrew McCoy and two other "narcotic suspects"; they all were trying "to contact a peddler", to buy drugs; they saw the defendant standing on the corner of Fortieth Street and Lancaster Avenue in Philadelphia; one of them called the defendant to the car and asked him "did he know where the 'cop' man was—that is the narcotic peddler?"; that to this Melvin Carter said: "I am the cop man. I have some of my own" but he also said: "Let's go away from here. The police are around here." Davis testified further that the defendant then got into the automobile and at the suggestion of one of the others, they all went to a house at 635 North Markoe Street, the home of a brother of Andrew McCoy; according to Davis he and Melvin Carter went into a rear room in the house while the others remained "immediately be-

hind [him] in the hallway"; that there, for $10 paid him by Davis the defendant sold him 2 "bags". The white powder in these two small packets was identified by the testimony of a chemist as heroin, a derivative of opium, the sale of which constituted a violation of the Act.

The defendant had been tried and acquitted in a Federal Court of a violation of the Jones-Miller Act, 42 Stat. 596, 21 USCA §174. The alleged violation arose from the same circumstances upon which defendant was convicted in the instant case. But the two statutes are not indentical, and where the same criminal act gives rise to an offense against two sovereigns, each may punish. *United States v. Lanza* (1922), 260 US 377, 43 S. Ct. 141. Where there is an acquittal in a court of one sovereign the plea of autrefois acquit is not available to the accused in a court of the other.

Officer Wilbur Davis had testified in the Federal Court to the same sale of heroin by the defendant Melvin Carter in the McCoy house. Going to the credibility of Davis, in the present trial of defendant in the lower court, defendant's counsel produced the court stenographer who had reported the trial in the federal court. Since the trial in that court resulted in an acquittal, he had no occasion to transcribe his stenographic notes. In the offer, counsel proposed to prove by the witness reading from his shorthand record, that Davis testified in the federal trial that "all three of them [i.e., Davis, the defendant, and Andrew McCoy were in the room] at the time of the transaction"; whereas at the trial of the present case Davis testified that Andrew McCoy, Milton White and Melvin Holleran (the three men who were with Davis in his automobile when they picked up the defendant on Fortieth Street) were "immediately behind" him in the hallway at the time of the sale. Defendant Melvin Carter took the stand in his own be-

half at his trial in the court below; he denied the sale and testified that he never had been in the house at 635 Markoe Street, in July 1955, or at any other time. In the light of the categorical denials of the defendant the discrepancy in Davis' testimony sought to be proven, may not have been prejudicial, but the defendant was entitled to question the credibility of Davis in accordance with his offer. Davis was the only Commonwealth witness who testified against the defendant as to his unlawful act, and his credibility therefore was subject to attack by proof of prior contradictory testimony as to any relevant matter. *Commonwealth v. Zervas,* 302 Pa. 510, 153 A. 767; *Commonwealth v. Neff,* 149 Pa. Superior Ct. 513, 27 A. 2d 737.

Pennsylvania, by statute has long recognized the competency of properly proven shorthand notes and their admissibility when read by the court stenographer who made them. Act of May 23, 1887, P. L. 158; 28 PS §327. "As to the mode of proof, the general law is that where the testimony is reduced to writing by the stenographer who took the stenographic notes, the person who took the notes may read from them or from the transcript, providing he testifies they were correctly taken": *Commonwealth v. Ryhal,* 274 Pa. 401, 409, 118 A. 358. Cf. *Ingram v. Pittsburgh,* 346 Pa. 45, 29 A. 2d 32; 1 Henry, Pennsylvania Evidence, §486. The proper method of proving what was said at a former trial is by the official stenographer. *Commonwealth v. House,* 6 Pa. Superior Ct. 92. The lower court however was right, under the circumstances, in refusing to permit the federal court stenographer to read from his shorthand notes, since defendant's counsel had not laid the ground by first calling the witness' attention to the alleged contradictory statement. Although it is not always necessary to lay grounds for the admission of testimony impeaching a witness. *Commonwealth v. Dils-*

*worth,* 289 Pa. 498, 137 A. 683. The matter rests in the sound discretion of the trial court whether a party who seeks to impeach the testimony of a witness is required to lay the groundwork for it, by confronting him with his allegedly contradictory statements, while he is still on the witness stand. Cf. *Giles v. Valentic,* 355 Pa. 108, 49 A. 2d 384.

It is clear however that there was no abuse of discretion here. Confronting Davis, an essential witness, with a contradictory statement, without prior notice of its content, manifestly would have put the Commonwealth at a decided disadvantage. The statement may have been one which, lifted from context, was contradictory on its face only, and which later in the testimony of the witness, or by the circumstances, was modified, qualified, or explained and thus made to conform with the testimony in the case on trial. If the testimony in the federal court had been allowed to be read into the record, without the proper ground laying, the situation could have been met only by a demand by the Commonwealth on cross-examination for a reading of all of Davis' testimony by the stenographer from his notes; and this would have been equally unfair to the defendant. We therefore conceive the law to be, that in a situation where the credibility of a witness is sought to be attacked by proof of prior contradictory statements, and such alleged contradictions appear only in the shorthand notes of a court stenographer, as a practical matter the passages sought to be introduced may not, in fairness to the opposite party, be read into evidence except under unusual circumstances indicating lack of previous knowledge and time within which to prepare a full transcript of all of the testimony of the witness on the subject. The instant case was not in that exceptional class. There was no reason here why a transcript of Davis' testimony in the federal

trial could not have been obtained, and submitted to Davis in the court below, as groundwork prior to the examination of the federal court stenographer as to the alleged conflicting statements going to Davis' credibility.

The conviction and the sentence were proper..

Judgment of sentence affirmed and it is ordered that defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence imposed or any part of it which has not been performed at the time the appeal in this case was made a supersedeas.

---

DISSENTING OPINION BY WATKINS, J.:

I find it necessary to dissent and would grant a new trial.

The defendant's right to a fair trial was prejudiced by being deprived of the use of prior contradictory testimony, given under doath, in a federal court, at the trial of the same defendant, on the same drug transaction, offered for the purpose of attacking the credibility of the Commonwealth's chief and only witness to the alleged unlawful act.

The majority find that the failure of counsel for the defendant to lay the groundwork for the introduction of the testimony, by first calling the witness's attention to the prior contradictory statements, where and when made, made their admission within the sound discretion of the court.

This reasoning might have logic and purpose if we were dealing with prior verbal contradictory statements not made under oath, made away from trial atmosphere or made at places and times having nothing to do with the crime charged.

But here, we are dealing with alleged contradictory testimony made under oath, evidenced by the stenographic notes of testimony, produced and to be read by the stenographer who made them. The testimony, under oath, was taken in a federal court of record, in the trial of the same defendant on the same drug transaction. The said witness was the chief witness for the Commonwealth both in this trial and in the federal trial. In the former, the defendant was convicted, in the latter acquitted.

In *Com. v. Fields,* 171 Pa. Superior Ct. 177, 90 A. 2d 391 (1952), the transcribed testimony of a magistrate's hearing was offered to impeach a witness without the necessary groundwork being laid. The Commonwealth objected for that reason and counsel for the defendant, feeling from the comment of the trial court that the ruling would be against him, abandoned his offer. This Court included this incident, among others that it found, operated to the disadvantage of the defendant and granted a new trial. Judge HIRT speaking for this Court, at page 181, said: "There were incidents in the trial which operated to the disadvantage of the defendants through no fault of theirs. Going to the credibility of Mrs. Jackson the notes of her testimony at the magistrate's hearing were offered in evidence to prove prior inconsistent testimony on matters germane to the issue. The notes were admissible to impeach the witness. Act of May 9, 1949, P. L. 1028, §12, 42 PS §1140, amending prior legislation. And under the circumstances the court well might have admitted the transcript of her prior testimony although ground had not been laid for its admission by first calling her attention to the contradictions." . . .

We can certainly infer from this language that if counsel for the defendant had not withdrawn his offer and if the court had denied admission of the testimony,

this Court would have properly found an abuse of discretion.

When the stenographer's transcript of a trial may be admitted without the presence of the stenographer, the same possibility of error exists in the transcription as when the stenographer reads directly from the notes of testimony. In fact, opposing counsel is in a much better position to ferret out error when the stenographer is present for cross-examination.

It was certainly not the fault of the defendant that the notes of testimony were not transcribed. The fact of an acquittal usually precludes the necessity of transcription. But if this is the chief complaint, there was nothing to prevent the Commonwealth from asking for, and the court directing the transcription of the entire testimony of the witness. Any question of material taken out of context, statements, modified, qualified or explained, could then be resolved.

"Formerly where it was intended to impeach the credibility of a witness by the proof of verbal statements contrary to his present testimony, the rule was imperative that the witness must first be asked as to the subject matter, the place and person involved in the proposed contradiction; otherwise no proof of such statements would be admitted. Later this rule was so far modified as to leave its enforcement to the sound discretion of the court, which discretion was subject to review." *Com. v. Rothman,* 168 Pa. Superior Ct. 163, note 1, page 166, 77 A. 2d 731 (1951).

If this rule was intended to apply to the testimony of a witness under oath in a court of record, where it seems to me the reason and purpose of the rule does not apply, then, clearly, under the circumstances of this case as above set forth, the court below abused its discretion and prejudiced the defendant in denying him the benefit of the alleged contradictory testimony.