## Commonwealth *v.* Stevens, Appellant.

26

Submitted March 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

Before DOWLING, J.

*Richard D. Walker,* Public Defender, for appellant.

*Marion E. MacIntyre* and *Rolf W. Bienk,* Deputy District Attorneys, and *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., April 3, 1974:

This is an appeal from a judgment of sentence in a case in which a jury found the appellant guilty of aggravated robbery,[1] and in which the appellant's mo-

---

[1] *See* § 705 of The Penal Code, Act of June 24, 1939, P. L. 872, 18 P.S. § 4705, *repealed,* Act of December 6, 1972, P. L. 1482, No. 334, § 5, *eff.* June 6, 1973. The date of the robbery in question was

tion for a new trial was denied. It is appellant's contention that the Commonwealth failed to prove beyond a reasonable doubt that he had been one of the two persons who committed the robbery in question. In view of certain evidence presented at trial, summarized hereafter, we affirm.

The Commonwealth presented evidence to the effect that a robbery had occurred at the Dauphin Deposit Trust Company in Steelton, Pennsylvania, on March 27, 1973. A teller at the institution testified that on that date, at approximately 1:00 p.m., two men entered the establishment and announced a robbery. The shorter of the two, she stated, appeared to be concealing something, like a weapon, and proceeded into the manager's office; the taller individual, whose height she estimated to be 5' 10" or 6', jumped over in front of her counter, removing money from the counter and a drawer, according to her testimony. She stated that at one point this man was perhaps no more than 3 inches from her, that he was wearing a dark, floppy, knit hat pulled down to his nose and dark glasses, and that she was able to look up underneath the hat and see his face.[2] She further stated that he wore black boots, black or navy-blue trousers, and a short jacket over a black shirt; that he was in the bank for from 3 to 5 minutes; and that he placed the money he took in a light green or yellow pillowcase. She stated that appellant was this man, and testified that as he and the accomplice fled on foot after leaving the institution she pointed them out to two police officers.

---

March 27, 1973. That the repealed statute remains applicable to the event is provided in § 2 of the Act of December 6, 1972, P. L. 1482, No. 334.

[2] The witness testified, however, that she had not seen the man's face without the glasses; she stated that she had seen most of his face, adding that "when he bent over you could see . . . the corner of the eyes."

One of the police officers testified as to his chase on foot after the two individuals who had been pointed out to him. He stated that the taller of the two men was about 6' in height, that he wore all dark clothes, that a hat resembling a woman's was down over his head, and that he was carrying a yellow pillowcase. Following the chase, during the course of which the taller man might have been out of his sight "for two seconds when he turned the corners," the officer shot the man, according to his testimony.[3] "When I hit him," he said, "he staggered, kept on his feet, and turned the corner, and when I turned the corner he was up against . . . [a] Church and he hollered, don't shoot no more, I'm hurt." The officer further testified that at the man's feet lay a yellow pillowcase containing a pair of glasses, a black or blue hat, and about $15,000 or $16,000 in bills, which money was, to the best of his knowledge, returned to the financial institution. He stated that appellant was the man whom he had shot.

Commonwealth exhibits consisting of a pillowcase, a hat, and glasses were identified by the officer as those referred to in his testimony. The pillowcase was also identified by the teller, mentioned above, as the one used by the taller robber to which her testimony referred; she stated that she was almost certain that the hat was the one worn by the robber, and she testified that the glasses were similar to those worn. A second teller identified the pillowcase as that used by the taller robber, the hat as that worn by him, and the appellant as the robber. The latter identification was qualified, however, by the witness' statement that it was not of a positive nature; she further stated that

---

[3] The officer stated that he was at a distance of about two blocks from the financial institution when he fired the shot in question.

she had not noticed whether the individual had been wearing glasses.[4] A third employee of the institution testified that, to the best of her knowledge, an audit conducted after the robbery's occurrence showed a deficiency of $15,741. She stated that this same amount was returned to the company, to the best of her knowledge.[5]

Appellant testified on his own behalf that he had been in the vicinity of the financial institution in Steelton on the day in question for the purpose of locating his sister-in-law to borrow some money. He stated that she usually rode on a certain street in the area. Upon emerging from a post office, he observed two men running "from the direction of the bank," carrying something, and being ordered to stop by police, according to his testimony. Needing money himself, he testified, and presuming that the men were carrying bank funds, he gave chase and seized a bag dropped by one of the men, who had fallen. He stated that he was then shot. Appellant further testified that he was not accustomed to wearing a hat, dark clothes, or dark sunglasses.

To the extent that the appellant's argument on appeal is that there was insufficient Commonwealth evidence presented as to his being one of the two participants in the robbery, we believe that the lower court's refusal to grant a new trial was justified. If the reasonable inferences of the Commonwealth's evidence are credited to the prosecution,[6] there is no deficiency of proof that appellant was a participant in the crime

---

[4] The witness testified that she had not looked in the face of the robber in question.

[5] An additional witness for the Commonwealth, a police officer, testified that he had captured the shorter man involved in the chase.

[6] See *Commonwealth v. Portalatin*, 223 Pa. Superior Ct. 33, 297 A.2d 144 (1972) ; *cf. Commonwealth v. Coyle*, 190 Pa. Superior Ct.

as charged. The evidence included an unequivocal identification of appellant by one of the institution's tellers,[7] a description of a chase of appellant by a police officer following the robbery, and a description of appellant's capture with the incriminating items detailed above.

To the extent that the appellant's argument is that the verdict was against the weight of the evidence respecting his participation in the crime, we are unable to find the abuse of discretion generally requisite for reversal of the lower court's action. *See Commonwealth v. Fields,* 171 Pa. Superior Ct. 177, 90 A.2d 391 (1952). The weight to be accorded appellant's explanation of the circumstances in which he found himself following the occurrence of the robbery was, to a substantial degree, a matter of credibility, properly left to the jury's determination.

Judgment of sentence affirmed.

---

509, 154 A.2d 412, *allocatur refused,* 190 Pa. Superior Ct. *xxvii* (1959).

[7] We are unable to agree with appellant's contention in his brief on appeal that "[a] careful reading of [the teller's] testimony discloses that [she] never had an opportunity to see [appellant's] face." She testified on direct examination that at one point "I could look up underneath the hat and see his face." The fact that the robber was wearing dark glasses when he committed the crime does not discredit the identification as a matter of law, under the present circumstances.