## Commonwealth v. Ryhal, Appellant.

*Criminal law—Murder — Trial — Charge — Issue raised by accused—Action of district attorney—Evidence.*

1. On a murder trial, where, at the end of the general charge, the district attorney requests the court to charge on an issue put in the case by defendant himself in certain points for charge, not referred to in the general charge, and not involved in the theory on which the case was tried, and the judge states that he will take care of that phase of the case when he answers defendant's points, whereupon the request is withdrawn, and the judge affirms the points with a proper explanation, neither the action of the district attorney nor that of the court, can be alleged as ground for reversal.

2. A defendant in a murder case cannot ask for his discharge at the end of the Commonwealth's case, where the testimony established that he had taken the deceased, a young girl, to a lonely spot where she was found practically nude and mortally injured, that he was the last person with her, and that no one else was there, that he had with him a policeman's mace which could have caused the injuries, and which he hid, and that he had fled and hid himself.

VOL. CCLXXIV—26

*Criminal law—Murder—Indictment—Date alleged in indictment.*

3. It is not necessary, except where time enters into the nature of an offense, to prove the exact time alleged in the indictment. Any other time may be shown on the trial if it is prior to the finding of the indictment, and within the period prescribed by the statute of limitations.

*Criminal law—Murder—Stenographic notes taken at preliminary hearing—Competency of stenographer—Ground of objection—Appeal.*

4. Where testimony is reduced to writing by a stenographer who took the stenographic notes, the person who took the notes may read from them or from the transcript, providing he testifies they were correct.

5. It cannot be alleged on appeal that stenographic notes were improperly received in evidence because the competency of the stenographer was not shown, where no objection was made at the trial, to the admission of the notes on the ground that the stenographer was not competent.

*Criminal law—Murder—Evidence—Best evidence—Testimony of deceased at preliminary hearing—Cross-examination—Change of charge from assault to murder.*

6. Where an accused is under arrest on the charge of assault with intent to kill, at the time of the preliminary examination, the fact that it was afterwards changed to an indictment for murder, after the death of the victim, does not prevent admission of testimony taken at the preliminary hearing.

7. The testimony of a witness, deceased at the time of trial, which had been given against the accused at a preliminary hearing, is admissible, where the accused has had an opportunity to subject the witness to cross-examination, provided he was present as the party charged with the offense which was being investigated, and the offense there charged and the one being tried are substantially the same.

8. In Pennsylvania, the rule is clearly established that in a murder trial evidence is admissible of the testimony of a deceased witness taken before a committing magistrate at a preliminary hearing in the presence of the accused and his counsel, the witness having been cross-examined by counsel for accused.

9. If it appears that the committing magistrate refused permission to cross-examine as to the identity of the accused, the latter cannot complain of this at the trial, if, on a proceeding for a change of venue, and on the trial, he admitted his identity.

10. Nor can he complain that he was not permitted to cross-examine the deceased as to statements made by her to a police

matron, if it appeared deceased denied she had had any conversation with the matron.

11. In such case the accused could at the trial call the police matron, or otherwise contradict the testimony of deceased.

Argued April 18, 1922.  Appeal, No. 49, Oct. T., 1922, by defendant, from judgment of O. & T. Lawrence Co., Dec. T., 1921, No. 1, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Thomas Vernon Ryhal.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Indictment for murder.  Before EMERY, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed.  Defendant appealed.

*Errors assigned* were various rulings and instructions sufficiently appearing by the opinion of the Supreme Court, quoting record.

*C. H. Akens,* with him *Clyde Gibson,* for appellant.—There is no presumption that a stenographer in a law office is qualified or competent to make a full and correct report of the testimony of a witness in shorthand: Com. v. Bone, 64 Pa. Superior Ct. 44; Com. v. Keck, 148 Pa. 639.

The accused was not accorded the privilege of meeting the witness "face to face" as he was not permitted to cross-examine deceased: Com. v. Cleary, 148 Pa. 26; Com. v. Lenousky, 206 Pa. 277.

The testimony was not given on the crime charged in the indictment on which defendant was being tried: Snyder v. Com., 85 Pa. 519.

*William E. Porter,* with him *R. L. Hildebrand,* District Attorney, and *George W. Muse,* former District

Attorney, for Commonwealth.—Testimony given in a former proceeding is admissible in a subsequent proceeding if the witness is dead: Chess v. Chess, 17 S. & R. 409; Moore v. Pearson, 6 W. & S. 51; Jones v. Wood, 16 Pa. 25; Evans v. Reed, 78 Pa. 415; Fearn v. Ferry Co., 143 Pa. 122; Kyper v. Sheaffer, 42 Pa. Superior Ct. 277; Com. v. Keck, 148 Pa. 639; Com. v. Cleary, 148 Pa. 26; McLain v. Com., 99 Pa. 86; Brown v. Com., 73 Pa. 321.

No error was committed by the court in overruling motion of counsel to discharge defendant when the Commonwealth rested: Com. v. Major, 198 Pa. 291; Com. v. Tassone, 246 Pa. 543.

OPINION BY MR. JUSTICE SCHAFFER, May 25, 1922:

Appellant was convicted of murder of the first degree for causing the death of Clara Belle Lennox.

The salient facts in the case are these: The dead girl, fourteen years of age, living with her parents in the City of New Castle, left her home about 11 o'clock on the morning of July 14, 1921, for the purpose of doing some shopping. The defendant, a married man, who had no personal acquaintance with her, accosted her on the street, gained her confidence by talking about her father, whom he claimed to know, and invited her to ride in his automobile, saying he would take her to the business section of the city. She got into the automobile and after driving a short distance in the direction he told her he would take, defendant changed his course, drove out into the country some four or five miles, turned into a lane but little traveled, proceeded along it to a woods, where he alighted from the car under the pretence of giving some berries which he had in the car, to a sister, and asked the girl to accompany him; she declined to do so. He took a policeman's mace from the car and left her for at least fifteen minutes. It turned out on the trial he did not have a sister in the vicinity. The girl remained in the lane while he was gone; on his return, they got into the automobile, and after driv-

ing a short distance along the lane, he stopped, and told her the rear wheels had locked. They both got out of the car and at his suggestion began to work about the rear wheels, he showing her how to pry between the spokes with the policeman's mace to unlock the brakes. After she had endeavored to do this for some little time, she took the mace out of the wheel, laid it down in the road, stepped back of the automobile and was standing looking at the defendant, who she testified had been eyeing her in a peculiar way, when she lost consciousness and had no memory of anything thereafter for several weeks. She said he had not gotten into the car, up to the time she became unconscious.

The accused testified he went to the lane for the purpose of getting some whiskey he had buried in the woods alongside of it, and to divert suspicion from himself in obtaining it, had taken the girl with him; that, when the wheels locked, and after showing her how to aid in prying the brakes loose with the policeman's mace, he got into the car and started it, the brake pressure having been somewhat released; that when the car started, it leaped ahead and then stopped; that he caught a glimpse of the girl, who had been thrown forward, jumped out of the car and found her lying partly under it, lifted her up, discovered blood running over her face and that she was unconscious. He described his endeavors to revive her, which he said were of no avail. Thinking she was dead and of the predicament he would be in, in view of his past record, with the supposedly dead girl and a car full of whiskey, he became panicked, picked her up, carried her into some bushes on the side of the lane and left her there. Coming back to the car, he found what had prevented it from running, corrected this, went to New Castle, where he had taken an aunt in the morning and returned with her to his uncle's, some twenty miles in the country. In the afternoon, he drove his wife to New Castle, for the purpose as he says, of getting a copy of their marriage certificate; the reason for obtaining it

is not apparent in the testimony; no endeavor was made to get it on arrival there. Leaving New Castle, accompanied by his wife, he drove out to the woods where he had left the girl, not telling his wife anything about what had occurred, purposing, as he testified, to pretend he had discovered the body and to take it to New Castle. This plan he abandoned, however, and concluded to give the impression that the girl had been ravished. He got out of the car in the near vicinity of the spot where the girl was lying, leaving his wife in the lane; she had not seen and did not see the girl. He entered the bushes where the latter was lying, pulled most of the clothing from her body, tearing some of her undergarments into shreds, and went back to the car. He then drove his wife to his uncle's house, hid the policeman's mace in a manure pile, destroyed the whiskey and washed away the blood of the girl's wound which had gotten on the running board of the car. His wife was not called as a witness in his behalf.

The following day, berry pickers in the neighborhood of the bushes where the girl had been laid heard moans and she was discovered. There were serious wounds about her head, five in number, from one of which, a fracture of the skull, she died on the following 27th of November. Medical testimony established that her death was due to the injuries she received at the time of the assault on July 14th.

The defendant read of the finding of the girl in the newspapers, and of the excitement created thereby; when officers visited his uncle's house, where he was staying, he fled, hid himself in a swamp for three days, then in the barn for a day and a night, returned to the house in the night time, hid between a feather bed and a mattress and was there found and arrested, information having been made against him charging him with rape, attempted rape and felonious assault.

The girl recovered sufficiently to testify against him at a preliminary hearing, in which she told the facts of his

taking her on the automobile ride and the circumstances up until the time she became unconscious. As a result of her testimony, he was bound over on the charges against him, other than rape, of which there was no medical proof. The story of the defendant on the stand and that told by his victim at the preliminary hearing agreed in substantially all respects until the time she said she became unconscious, and he said he got in the car to start it and she was injured by its sudden starting.

Another young girl called as a witness by the Commonwealth testified the defendant had invited her to take a ride earlier on the same day, that he had taken her to the same neighborhood, where she had refused to remain with him and that he had driven her back to town, reaching there sometime before 11 o'clock.

The defendant brings this appeal to us, alleging that the court erred in the following respects: (1) in admitting in evidence the stenographic notes of the testimony given by Clara Belle Lennox, the dead girl, on the hearing before the committing magistrate, because (a) the stenographer who took it was not competent, (b) that he was not permitted to fully cross-examine deceased; (2) in its refusal of his motion to be discharged at the close of the Commonwealth's case; (3) in its refusal of binding instructions in his behalf; (4) in its answer to the request of the district attorney for instructions to the jury on the question as to whether the abandonment of the deceased was sufficient to warrant a finding against him; (5) in the answer to his ninth point as to the effect on the question of his guilt of the abandonment of the deceased and leaving her to die after her injuries.

The district attorney at the conclusion of the general charge orally requested that the jury be instructed the defendant could be convicted if they believed the girl's death was caused by his abandonment of her; the court replied he would take care of that phase of the case when he came to pass upon the points submitted by the defendant covering it; the district attorney thereupon

withdrew the request, and the court said nothing to the jury on the question until in answer to the ninth and tenth points submitted by the defendant, which requested instructions that if the girl was abandoned and left to die in the woods by the accused, it must appear he was aware at the time she was alive, and, unless the jury were satisfied he was, they could not convict on the ground that he had neglected or abandoned her and they must be satisfied beyond a reasonable doubt that her death resulted from the neglect or abandonment. These points the court affirmed, saying in connection with them, that the jury should take into consideration all the testimony regarding her condition on the two days she remained in the woods, and the testimony of the defendant as to her appearance which led him to conclude she was dead, in determining whether or not he was aware at the time she was living and had abandoned her. We fail to see where the defendant has any ground to complain of the district attorney's request, which was withdrawn and not answered, or of the answers to his own points. The issue of death by neglect or abandonment was put in the case by the accused, nowhere in its general charge had the court said anything on the subject, and the record discloses the Commonwealth did not try the case on that theory.

The court could not have properly granted the accused's motion to discharge him at the end of the Commonwealth's case; the testimony then before the jury was sufficient, if believed, to have warranted his conviction. It established that he had taken the deceased to the lonely spot where she was found practically nude and mortally injured, that he was the last person with her and that no one else was there, that he had with him the policeman's mace, which could have caused her injuries and which he hid; it also showed his flight and hiding.

In this connection, one of the reasons assigned for the discharge, that the date of the indictment, November

27th, was not the date of the assault, is not a sound one. "It is not necessary except where time enters into the nature of an offense to prove the exact time alleged in the indictment. Any other time may be shown on the trial if it is prior to the finding of the indictment, and within the period prescribed by the statute of limitations": Com. v. Major, 198 Pa. 291; Com. v. Tassone, 246 Pa. 543. In contemplation of law, the blows, the consequent illness and the resulting death were one continuous offense.

What has been said as to the motion to discharge applies with full force to the error alleged in the refusal to affirm a point for binding instructions. After the defendant had testified, the case against him was stronger even than it had been as put in by the Commonwealth and was essentially one for the jury.

As to the contention that the notes of the testimony of Clara Belle Lennox given on the preliminary hearing of defendant were improperly received in evidence, because it was not shown that the stenographer who reported the testimony was competent, it would be a sufficient answer to say that the evidence was not objected to on the trial on the ground that the stenographer was not competent. She was produced at the hearing by the defendant's attorneys and was in their employ and reported the hearing for them; she testified to the integrity of her notes and transcript and that they correctly set forth the questions asked the witness and her replies. As to the mode of proof, the general law is that where the testimony is reduced to writing by the stenographer who took the stenographic notes, the person who took the notes may read from them or from the transcript, providing he testifies they were correctly taken: 16 Corpus Juris, section 1558, p. 759.

As to the further contention, that the testimony could not be received, because the charges the defendant was called on to meet at the preliminary hearing, at which the testimony was taken, are not the same as those upon

which he was tried, it will be observed that while the charges were not the same, they grew out of the same facts and circumstances,—the assault upon the girl by him,—the only circumstances not existing on the preliminary hearing when the testimony was given and which had supervened at the trial was the culminating one, her death. The record discloses that the information on which the first hearing was founded was sworn out by the same person who made the affidavit to the murder complaint; he testified that both prosecutions grew out of the same facts and circumstances. The witness, Clara Belle Lennox, having died between the time she testified and the trial of the defendant, the parties being the same in each instance, the Commonwealth and the defendant, and the issues being the same, whether she had been assaulted and whether he was guilty of the assault, her testimony was competent evidence against him: Com. v. Keck, 148 Pa. 639; Com. v. Cleary, 148 Pa. 26; McLain v. Com., 99 Pa. 86; Brown v. Com., 73 Pa. 321; 16 Corpus Juris, section 2117, p. 839. Where the accused was under arrest upon the charge of assault, with intent to kill, at the time of the preliminary examination, the fact that it was afterwards changed to an indictment for murder, upon the death of the victim, does not prevent admission of the testimony taken at the preliminary hearing: State v. Wilson, 24 Kansas 189.

Where the different crimes, or different degrees of the same crime, were based on the same act, the following accusations have been held sufficiently similar to make testimony at the preliminary examination of the one admissible at the trial of the other, provided the other requisites for admission are established: Assault with intent to kill and murder: Dunlap v. State, 9 Texas App. 179; Hart v. State, 15 Texas App. 202. Assault and robbery and murder: Rex v. Smith, 2 Starkie (Eng.) 208. Assault and battery and murder: State v. O'Brien, 81 Iowa 88. Assault with intent to do grievous

bodily harm and murder: Reg. v. Beeston, 6 Cox C. C. (Eng.) 425; and see 15 Amer. Law Rep. 526.

While there has been much contrariety of view among the courts on the question of the admissibility of the testimony of a witness deceased at the time of trial which had been given against the accused at a preliminary hearing, the very complete note to the case of State of South Dakota v. Hefferman, 25 L. R. A. (N. S.) 868, which reviews most of the cases on the question, announces the conclusion that the overwhelming majority of the courts have favored the view that such testimony is admissible, where the accused person has had the opportunity to subject the witness to cross-examination, provided he was present as the party charged with the offense which was being investigated and the offense there charged and the one being tried are substantially the same. "Generally, the viva voce examination of a witness in the presence of the party on trial is required, because it is the best evidence. The direct and cross-examinations are the best means of eliciting the whole truth, and the manner of the witness is one of the tests by which to determine the degree of credit to which he is entitled; but this is not always attainable, and what a deceased witness, or one who from other causes has become incapacitated to give evidence, has sworn on a former trial or preliminary examination where the accused had the opportunity to cross-examine the witness, is admitted on the principle that it is the best of which the case admits. Such testimony is not open to the objections ordinarily urged against hearsay or derivative evidence, having been delivered under the sanction of an oath, and the adverse party having had the full benefit of a cross-examination. It is therefore admitted upon the principle of necessity so as to prevent a defeat of the ends of justice": 8 Ruling Case Law, section 209, p. 213.

While in Com. v. Lenousky, 206 Pa. 277, we held that testimony of an absent witness given at a preliminary hearing before a justice of the peace in the presence of

the prisoner was not admissible on his subsequent trial, where it appeared that the prisoner was not represented by counsel at the preliminary hearing and was not informed of his right to cross-examine, yet it was pointed out that such testimony is admissible, where the right of cross-examination has been exercised. With us, the rule has been clearly established, as the heretofore cited cases show, that in a murder trial, evidence is admissible of the testimony of a deceased witness taken before a committing magistrate at a preliminary hearing in the presence of the accused and his counsel, the witness having been cross-examined by the counsel for the accused.

So far as opportunity to cross-examine is concerned, the record shows the cross-examination fills eighteen typewritten pages. Upon only two matters of any consequence was full opportunity to cross-examine denied by the rulings of the committing magistrate, the identity of the defendant and statements alleged to have been made by the witness to a police matron. As to the first, in a petition for change of venue and on the trial, the defendant admitted his identity; and as to the second, the girl denied that she had had any conversation with the police matron, and thus full opportunity was given to contradict her testimony on the trial if it was desired to do so, but the police matron was not produced as a witness.

In what has been said, all the assignments of error have been disposed of; we find merit in none of them and they are all overruled.

The defendant, for a most atrocious and revolting crime, had the fair and impartial trial to which the law entitled him; the jury and the trial judge were satisfied of his guilt; and, after a careful study of the record, so are we.

The judgment is affirmed and the record remitted to the court below for the purpose of execution.