393 A.2d 306

**George E. LEPLEY, Esquire, Petitioner,**

v.

**LYCOMING COUNTY COURT OF COMMON PLEAS.**

Supreme Court of Pennsylvania.

Argued April 20, 1978.

Decided Oct. 5, 1978.

George E. Lepley, Jr., Asst. Public Defender, pro se.

William S. Kieser, Dist. Atty., Kenneth D. Brown, Asst. Dist. Atty., Williamsport, Robert F. Banks, Asst. Dist. Atty., Mercer, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-EROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

■ This case presents the question whether the trial court's order directing petitioner, George E. Lepley, Jr., Esquire, to make available to the Commonwealth the tape he made of his client's preliminary hearing deprives his client of his Sixth Amendment right to counsel and Fifth Amendment privilege against self-incrimination. We hold that it does not and deny petitioner's request for Writ of Prohibition.

Petitioner, an assistant public defender of Lycoming County, was appointed counsel for Robert C. Walker who is charged with conspiring with John Alonzo Basey to commit arson. On November 2, 1977, Basey, who earlier had pled guilty to similar charges, testified at Walker's preliminary hearing as the Commonwealth's chief witness. Petitioner, to prepare Robert Walker's case, used his own tape recorder to make a recording of the preliminary hearing, including the testimony of Basey.[1] On December 22, 1977, Basey received a sentence of imprisonment inconsistent with his plea agreement with the Commonwealth.[2] This inconsistency prompted Basey, when interviewed by an assistant district attorney before Walker's trial set for January, 1978, to declare that, although subpoenaed, he would assert his Fifth Amendment privilege against self-incrimination at Walker's trial. Basey's attorney reaffirmed several times subsequently that he felt Basey would incriminate himself if he testified and thus would claim his Fifth Amendment privilege.

On January 27, 1978, the Commonwealth, asserting that Basey was legally unavailable to testify at Walker's trial, petitioned the Court of Common Pleas of Lycoming County to order petitioner to "turn over the tape recording of the preliminary hearing to the Commonwealth or the Court, or, in the alternative, to turn such tape over to the Court for an in camera review of such so the Court may fairly decide the issue as to production of such tape recording pursuant to Commonwealth's subpoena." On January 30, 1978, the court ordered petitioner to turn the tape over to the court for in

1. See generally Pa.R.Crim.P. 141; *Wilson v. Blake*, 475 Pa. 627, 381 A.2d 450 (1977).

   Lycoming County does not routinely make stenographic recordings of preliminary hearings, and no official record was made in this case. Because the Commonwealth did not record Walker's preliminary hearing, petitioner's tape recording is the only record of the hearing.

2. The Commonwealth's brief states:

   "It should be noted that [Basey's] sentence was inconsistent with the plea agreement which Basey had struck with the Commonwealth. The reason . . . is that Judge Thomas C. Raup of Lycoming County (the sentencing judge) refused to be bound by the terms of the agreement because of the heinous nature of the arson offense."

camera review, but set no date for compliance. Thereafter, the court issued the following order:

"AND NOW, February 24, 1978, on motion of the Commonwealth's petition for order directing that the defense attorney deliver to the attorney for the Commonwealth a tape recording of the preliminary hearing testimony of John Basey and it appearing to the Court that John Basey will be 'unavailable' as a witness at trial in this case and that the tape recording in question is the only record (other than the recollection of spectators) of the preliminary hearing testimony, the Court concludes that the tape recording is in the nature of real evidence relevant to the issue of innocence or guilt and that the Commonwealth has a right of access to the same for possible use at trial. Accordingly, it is ORDERED and DIRECTED that the tape recording or a complete and accurate copy thereof be forthwith delivered by the defendant to the attorney for the Commonwealth."

That same day, petitioner countered with a petition for review in this Court, to which the Commonwealth, as an interested party, filed an answer. On February 28, 1978, petitioner filed in the Court of Common Pleas an Application for Dismissal of Order or in the Alternative Stay of Enforcement of Order. On March 13, 1978, the court issued an order staying all proceedings below pending this Court's resolution of petitioner's petition for review. On April 5, 1978, this Court granted the petition for review, set a date for oral argument on the request for writ of prohibition and stayed proceedings in the matter.[3]

---

**3.** We hear this petition for writ of prohibition pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 201(2), 17 P.S. § 211.201(2) (Supp.1978).

The extraordinary writ of prohibition is not the favored method of reviewing pretrial orders. Ordinarily, the aggrieved party must raise the issue on direct appeal from a final judgment. The premise upon which this general policy rests is that, in the great majority of cases, greater harm is likely to result to the judicial process by reason of protracted delay due to interim review of pretrial orders than by enforcement of a possibly improper pretrial order.

However, in certain circumstances, we have recognized the writ of prohibition as a proper method for reviewing pretrial orders. Public

■ It is well established that prior testimony from a preliminary hearing of an unavailable witness is admissible at trial, provided the person against whom the testimony is offered had counsel and a full opportunity to cross-examine the witness during the earlier proceeding. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); accord, *Commonwealth v. Clarkson*, 438 Pa. 523, 265 A.2d 802 (1970).[4] Walker had a complete and adequate opportunity at the preliminary hearing to cross-examine Basey, whose testimony was on issues not substantially different from those which will arise at trial. Therefore, assuming the tape of the former testimony is properly authenticated and proven accurate and reliable, see *Commonwealth v. Johnson*, 450 Pa. 575, 301 A.2d 632 (1973); *Commonwealth v. Bolish*, 381 Pa. 500, 113 A.2d 464 (1955), and that the trial court properly concludes Basey is indeed "unavailable," no violation of Walker's constitutional right of confrontation will be involved. See *Commonwealth v. DiPietro*, Mass., 367 N.E.2d 811 (1977); *Shifflett v. Commonwealth*, 218 Va. 25, 235 S.E.2d 316 (1977). The remaining issue is thus whether Walker, through petitioner, his attorney, can be compelled to produce the tape of the preliminary hearing for the Commonwealth to use in its case in chief at Walker's trial.

■ Any procedural system must conform to requirements of fundamental fairness and due process. The prevalence of changes in federal and state rules of criminal procedure, however, reflect the growing concern that games-

concern, particularly in the field of criminal law, with respect to proper order and regularity in judicial proceedings may call for the use of the writ. See *Commonwealth v. Caplan*, 411 Pa. 563, 192 A.2d 894 (1963). Particularly where, as here, this Court faces a question of first impression of general importance to criminal defendants, prosecutors and trial courts, this Court may review a pretrial order on a petition for writ of prohibition.

4. The common law rule permitting admission of notes of testimony from a preliminary hearing in which the accused had a full opportunity to cross-examine the witness was not affected by the Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582 (1964) providing for use at trial of prior testimony taken before a court of record. *Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350 (1977); *Commonwealth v. Clarkson*, 438 Pa. 523, 265 A.2d 802 (1970).

manship too often may govern the conduct of criminal proceedings, resulting in a general obfuscation of issues. As the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Discovery and Procedure Before Trial observes:

"In spite of its obvious entertainment qualities, trial gamesmanship by way of obfuscatory tactics is generally offensive to the dignity of the court as an institution and destructive of respect for legal processes. Where life, liberty and protection of communities from crime are the stakes, gamesmanship is out of place. This does not mean that the adversary system is to be in any way discounted, except perhaps in its excesses."

Id., Comment to § 1.1 at page 31.

Mr. Chief Justice Burger, writing for a unanimous Court in *United States v. Nixon*, 418 U.S. 683, 708, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974), further explained:

"We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

"Only recently the Court restated the ancient proposition of law, albeit in the context of a grand jury inquiry rather than a trial,

'that "the public . . . has a right to every man's evidence," except for those persons protected by a constitutional, common-law, or statutory privilege, *United States v. Bryan*, 339 U.S. [323, 331, 70 S.Ct. 724, 730, 94

L.Ed. 884 (1949)]; *Blackmer v. United States,* 284 U.S. 421, 438 [52 S.Ct. 252, 76 L.Ed. 375] (1932). . . .' *Branzburg v. Hayes,* 408 U.S. 665, 688 [92 S.Ct. 2646, 33 L.Ed.2d 626] (1972).

The privileges referred to by the Court are designed to protect weighty and legitimate competing interests. Thus, the Fifth Amendment to the Constitution provides that no man 'shall be compelled in any criminal case to be a witness against himself.' And, generally, an attorney or a priest may not be required to disclose what has been revealed in professional confidence. These and other interests are recognized in law by privileges against forced disclosure, established in the Constitution, by statute, or at common law. Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." (footnote omitted.)

We conclude that the evidence sought to be produced is not protected against compelled disclosure by a constitutional, statutory or common-law privilege, and therefore must, as ordered, be made available to the prosecution "to ensure that justice is done."

■ First, we reject any argument that petitioner's recording of the preliminary hearing is a privileged "work-product" within the principles declared in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). As the United States Supreme Court stated in *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975):

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system."

Indeed, even in announcing the "work-product" rule, the *Hickman* Court recognized that work-product notions may be insufficient to prevent discovery of evidentiary material.

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."

*Hickman v. Taylor,* supra, 329 U.S. at 511, 67 S.Ct. at 394.

Here, the tape sought is nothing more than an account of proceedings in open court which anyone present was able to hear. The Commonwealth does not seek production of any personal notes or memoranda prepared by petitioner for use in trial. The tape does not contain petitioner's private thoughts or strategies requiring protection. While petitioner's efforts were responsible for preserving the preliminary hearing testimony on tape, this is insufficient to bring the tape within the work-product privilege.

Other courts which have considered the problem in the same or similar contexts have reached the same conclusion. In *Commonwealth v. Mustone,* 353 Mass. 490, 493, 233 N.E.2d 1, 4 (1968), the Supreme Judicial Court of Massachusetts considered questions concerning the possible use at trial of a witness's testimony at a probable cause hearing. A stenographer, retained by defendants and not specifically sworn before or during the district court hearing, prepared a transcript of the testimony. The court first concluded that because counsel had had a complete and adequate opportunity at the probable cause hearing to cross-examine the Commonwealth witness now unavailable, the witness's prior testimony, if reproduced with substantial completeness and accuracy, could be admitted at trial without violating the defendants' constitutional right of confrontation. The court then rejected the contention that the transcript of the testimony, given in open court, constituted privileged "work-product." The court stated:

"The transcript merely recorded what a complaining witness testified in open court. His testimony is material and significant. It is in no real sense the result of work by the

defendants' attorneys. Nc privilege is to be given to this material merely because the attorneys did obtain the stenographer and ask some questions at a hearing at which [the witness] could have been compelled to testify. *Stimpert v. Abdnour*, 24 Ill.2d 26, 28–32, 179 N.E.2d 602. See *McGill v. Illinois Power Co., Inc.*, 18 Ill.2d 242, 246–247, 163 N.E.2d 454."

Likewise, in *Fisher v. Commonwealth*, 217 Va. 808, 813, 232 S.E.2d 798, 802 (1977), the Supreme Court of Virginia rejected the defendant's contention that the trial court erred in permitting use at trial of a transcript of a Commonwealth witness's preliminary hearing testimony. The defendant contended that because the transcript was prepared at the request of the defendant's attorney and at the defendant's cost, it constituted the attorney's "work-product." The court held that the "attorney's 'work-product' privilege does not preclude use at a subsequent trial of recorded testimony given in open court during a preliminary hearing at which the witness has been, or could be, compelled to testify." Cf. *Stimpert v. Abdnour*, 24 Ill.2d 26, 179 N.E.2d 602 (1962) (copy of statement obtained by the plaintiff from minor defendant prior to filing suit is subject to court production order even though "the ingenuity of counsel may have been responsible for finding the defendant, obtaining a stenographer, and posing questions"); *McGill v. Illinois*, 18 Ill.2d 242, 163 N.E.2d 454 (1960) (defendants entitled to discover depositions taken by plaintiff because "they are the product of the power of the State to compel the testimony of witnesses rather than of the ingenuity or resourcefulness of any lawyer").

■ Similarly, we reject the claim that forced production of the tape violates the privilege against self-incrimination. While petitioner recorded the tape, a third party provided the testimony at issue. As the United States Supreme Court stated in *United States v. Nobles*, supra, 422 U.S. at 233–34, 95 S.Ct. at 2168:

"In this instance disclosure of the relevant portions of the defense investigator's report would not impinge on the

fundamental values protected by the Fifth Amendment. The court's order was limited to statements allegedly made by third parties who were available as witnesses to both the prosecution and the defense. Respondent did not prepare the report, and there is no suggestion that the portions subject to the disclosure order reflected any information that he conveyed to the investigator. The fact that these statements of third parties were elicited by a defense investigator on respondent's behalf does not convert them into respondent's personal communications. Requiring their production from the investigator therefore would not in any sense compel respondent to be a witness against himself or extort communications from him.

"We thus conclude that the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial."

We also cannot agree with petitioner that to compel production of the tape would have an impermissible "chilling" effect upon his client's right to counsel. In arguing that if he "can be forced to surrender a tape of a Preliminary Hearing, he is being stripped of the valuable tool," petitioner misperceives the order of the trial court. The order does not require petitioner to surrender to the Commonwealth the only copy of the tape, but requires only that he make a copy available. Thus, the only question is whether compelling an attorney to provide the Commonwealth a copy of the preliminary hearing testimony would have a "chilling" effect on full preparation by defense attorneys and on the attorney-client relationship thereby denying defendants their right to counsel.

Defense against criminal charges is fraught with difficult choices. For example, a defendant must choose between attending a preliminary hearing, or waiving the hearing for fear that the record thereof will later be used against him at trial, *California v. Green*, supra; between testifying at trial and subjecting himself to impeachment by evidence of prior

crimes or refraining from exercising his constitutional right to testify in his own behalf, *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973); between accepting the services of court-appointed counsel, with knowledge that he may have to repay the expenses incurred, or declining the services of appointed counsel and thus "chilling" his constitutional right to counsel. *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). However, courts have consistently recognized that imposition of these admittedly difficult choices is not unconstitutional.

In *Commonwealth v. Bighum*, supra, 452 Pa. at 564, 307 A.2d at 261, this Court stated:

"In *McGautha v. California*, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971) the Court observed: 'The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow. *McMann v. Richardson*, 397 U.S. 759, 769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. · The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved."

Under Pa.R.Crim.P. 141, defendants have a right to record electronically preliminary hearing proceedings. *Wilson v. Blake*, 475 Pa. 627, 381 A.2d 450 (1977). We noted in *Wilson* that "[o]ur interpretation of Rule 141 does not rest upon principles of due process; we hold that appellants are entitled by Rule 141 to make tape recordings of their preliminary hearing regardless of whether due process permits a contrary result." We find without merit petitioner's argument that forced production of the tape will tend to deter defense counsels' trial preparation, i. e., by not tape recording their clients' preliminary hearings. The deterrent effect here is no more than that present when counsel must decide

whether to obtain, pretrial, a written statement from a potential witness, knowing that he might be compelled to produce it at trial to enable the Commonwealth to cross-examine the witness effectively. *United States v. Nobles*, supra. Moreover, defense counsel's recording will not often be the only official record. Also, the possibility that a key Commonwealth witness will become unavailable in situations where the defense possesses the only record of the witness's prior testimony is so remote, that we do not believe any diligent defense counsel will, for that reason, refrain from exercising his right to record the preliminary hearing.

Consistent with the "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice," [5] we conclude that petitioner may not make private what was public at its inception. The Lycoming County Court of Common Pleas properly ordered petitioner to make available to the Commonwealth this non-privileged tape recording for possible use at Walker's trial. Accordingly, we deny petitioner's request for writ of prohibition.

Writ of prohibition denied.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. As I have previously written in *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977) (dissenting opinion of Manderino, J.) and *Commonwealth v. Velasquez*, 449 Pa. 599, 296 A.2d 768 (1972) (dissenting opinion of Manderino, J.), the use of the transcript of a witness's testimony at a preliminary hearing cannot be introduced at trial without violating the accused's constitutional rights. The petition for review should be granted.

5. *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966), quoted in *Lewis v. Court of Common Pleas*, 436 Pa. 296, 304 n.4, 260 A.2d 184, 189 n.4 (1969).