[J-80-2018] [MO: Mundy, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

| | | |
|---|---|---|
| GEORGE R. BOUSAMRA, M.D. | : | No. 5 WAP 2018 |
| | : | |
| | : | Appeal from the Order of the Superior |
| v. | : | Court entered July 19, 2017 at No. |
| | : | 1637 WDA 2015, affirming the Order |
| | : | of the Court of Common Pleas of |
| EXCELA HEALTH, A CORPORATION; | : | Allegheny County entered October 6, |
| WESTMORELAND REGIONAL | : | 2015 at No. G.D. 12-003929, and |
| HOSPITAL, DOING BUSINESS AS | : | remanding |
| EXCELA WESTMORELAND HOSPITAL, | : | |
| A CORPORATION; ROBERT ROGALSKI; | : | ARGUED: October 24, 2018 |
| JEROME E. GRANATO, M.D.; LATROBE | : | |
| CARDIOLOGY ASSOCIATES, INC., A | : | |
| CORPORATION; ROBERT N. STAFFEN, | : | |
| M.D.; MERCER HEALTH & BENEFITS, | : | |
| LLC; AND AMERICAN MEDICAL | : | |
| FOUNDATION FOR PEER REVIEW AND | : | |
| EDUCATION, INC., A CORPORATION | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: EXCELA HEALTH, | : | |
| WESTMORELAND REGIONAL | : | |
| HOSPITAL, ROBERT ROGALSKI, | : | |
| JEROME E. GRANATO, M.D., AND | : | |
| LATROBE CARDIOLOGY ASSOCIATES, | : | |
| INC. | : | |

## CONCURRING OPINION

**JUSTICE DONOHUE**                    **DECIDED: JUNE 18 2019**

I join in the Majority's determination that Excela Health ("Excela") waived attorney-client privilege when its in-house counsel (Timothy Fedele ("Fedele")) disseminated confidential communications prepared by an outside attorney to a third party, Molly Cate ("Cate"), a principal of a public relations consulting firm (Jarrard, Phillips, Cate & Hancock

("Jarrard")).  I also concur in the Majority's decision to adopt a test for waiver of the work product privilege akin to that set forth in section 91(4) of the Restatement (Third) of the Law Governing Lawyers ("Restatement").  I write separately, however, to offer what I consider to be a significant, if not dispositive, consideration for the trial court when applying the test adopted here on remand.

With respect to the attorney-client privilege, the Majority correctly indicates that the general rule is that this privilege is waived when the confidential communication at issue is shared with a third party.  Majority Op. at 23.  The Majority recognizes that Jarrard was a third party, as Cate was not an employee, officer, executive or director of Excela.  *Id.* at 28.  Moreover, no exception to the general rule applied here, as Fedele's transmittal of the confidential communication was not for the purpose of assisting outside counsel in providing legal advice to Excela.  *Id.*  Fedele did not request input, advice or an opinion on outside counsel's work from Jarrard.  *Id.*  As a result, Fedele's sharing of outside counsel's communications with Cate resulted in a clear waiver of the attorney-client privilege.

Turning to the issue of waiver of the work product doctrine,[1] the starting point must be this Court's recognition in *Lepley v. Lycoming County Court of Common Pleas*, 393

---

[1]  The Majority indicates that the purpose of the work product doctrine is to "protect the mental impressions and processes of an attorney acting on behalf of a client, regardless of whether the work product was prepared in anticipation of litigation."  Majority Op. at 14. I take issue with this statement of the law in two respects.  First, it is dicta, as our grant of allocatur with respect to the work product doctrine was limited to the issue of its waiver, not its scope.  *BouSamra. v. Excela Health*, 179 A.3d 1079 (Pa. 2018) (per curiam). Contrary to the Majority's contention, it is unnecessary to define the scope of the work product doctrine in order to delineate a waiver test for whatever materials are deemed to be immune from discovery pursuant to said doctrine.  The present case provides a clear example of this point, as we have identified a waiver test without any consideration of

whether the materials in question constitute, or do not constitute, attorney work product. To the contrary, our grant of allocatur presumed that the documents at issue were otherwise (i.e., absent waiver) protected by the work product doctrine. In its Opinion the Majority makes the same presumption, as it merely announces that the documents are attorney work product without any disclosure of the nature or contents of those documents (including whether or not they were prepared in anticipation of litigation). See Majority Op. at 17 n.8. As such, the Majority's contention that we should not "declare the work product protection waived without first determining its applicability to the facts," *id.* at 13 n.5, is simply untrue, as there are no "facts" in this case upon which to do so. In sum, the Majority's discussion of the scope of the doctrine sheds no light on the issue of waiver of the doctrine's protections.

Second, the Majority expands the work product doctrine's protections outside of the litigation context, such that any "mental impressions and processes of an attorney acting on behalf of a client," are protected without regard to whether counsel's actions were undertaken in anticipation of (or in connection with) litigation. Majority Op. at 14. While this Court has never issued a definitive statement regarding the scope of the attorney work product doctrine, on those occasions when we have commented on its breadth, this Court has consistently reflected that it applies in connection with efforts to defend clients against adversaries in litigation. *See, e.g.*, *Commonwealth v. Kennedy*, 876 A.3d 939, 948 (Pa. 2005) (emphasis added) (indicating that the work product doctrine "promotes the adversary system by enabling attorneys **to prepare cases** without fear that their work product will be used against their clients") (quoting *Westinghouse Electric Corporation v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991)); *Lepley v. Lycoming County Court of Common Pleas*, 393 A.2d 306, 310 (Pa. 1978) ("At its core, the work-product doctrine shelters the mental impressions of the attorney, providing a privileged area within which he can analyze and **prepare his client's case**.") (emphasis added) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Similarly, we have indicated that the doctrine protects "the confidentiality of papers prepared by or on behalf of attorneys **in anticipation of litigation**." *Commonwealth v. Williams*, 86 A.3d 771, 59 n.16 (Pa. 2014) (quoting *Westinghouse*, 951 F.2d at 1428).

In expanding the scope of the attorney work product doctrine well beyond the bounds recognized by this Court to date, the Majority relies exclusively upon two cases from our intermediate appellate courts to conclude that the "in anticipation of litigation" language in Rule 4003.3 is inclusive rather than exclusive. Majority Op. at 14 n.6 (citing *In re Estate of Paterno v. NCAA*, 168 A.3d 187 (Pa. Super. 2017) and *Bagwell v. Pa. Dept. of Educ.*, 103 A.3d 409 (Pa. Commw. 2014)). As explained herein, there is good reason to question the correctness of these decisions, and without advocacy and a careful and detailed analysis by this Court, I am unwilling to unreflexively adopt their conclusions in dicta here. These two cases rely upon a questionable distinction between federal and Pennsylvania procedural rules, a difference that this Court has not recognized. In *Paterno*, for example, the court noted that while Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure states that a party may not discover documents and tangible things "prepared in anticipation of litigation," Pennsylvania's Rule 4003.3 "does not similarly

A.2d 306 (Pa. 1978) that work product is "not protected against compelled disclosure by a Constitutional, statutory, or common-law privilege[.]" *Id.* at 310. Instead, protection for an attorney's work product is set forth in Rule 4003.3 of our procedural rules as adopted by this Court:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. **The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.** With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3 (emphasis added).

On its face, the highlighted portion of the rule suggests that an attorney's work product may never be subject to discovery during litigation, as it does not appear to admit to any exceptions. In practice, however, this is not the case. The explanatory comment provides one such exception, specifically the circumstance in which the legal opinion of an attorney becomes a relevant issue in the litigation, including for example in an action

cabin Pennsylvania's work product privilege." *Paterno*, 168 A.3d at 200. When this Court adopted Rule 4003.3 in 1978, however, we did not recognize any intent to differentiate our rule from its federal counterpart in this manner. To the contrary, the explanatory comment recognizes just two distinctions from its federal counterpart: the federal rule permits discovery of work product only upon a showing of substantial need, and our rule distinguishes between the protections afforded to the attorney and to a party' representative. Pa.R.C.P. 4003.3 Explanatory Comment – 1978. Accordingly, the explanatory note does not acknowledge the distinction from federal law that the Superior Court attempted to draw in *Paterno*.

for malicious prosecution or abuse of process in which the defense is based upon a good faith reliance on the advice of counsel. Pa.R.C.P. 4003.3 Explanatory Comment. Moreover, Excela freely admits that the work product protection may be waived if it is given "to a newspaper, putting it on a website, or otherwise widely disseminating [it.]" Excela's Reply Brief at 10.

In determining when work product protections have been waived, I agree with the Majority's adoption of a test aligned with the one set forth in section 91 of the Restatement.[2] This provision states, in relevant part, that "[w]ork-product immunity is waived if the client, the client's lawyer, or another authorized agent of the client … discloses the material to third persons in circumstances in which there is a significant likelihood that an adversary or potential adversary in anticipated litigation will obtain it." Restatement § 91(4) (2000). As the Majority appropriately notes, this test has been widely adopted and applied by federal and state courts alike. *See, e.g.*, *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011); *United States v. Massachusetts Institute of Technology (MIT)*, 129 F.3d 681, 687 (1st Cir. 1997); *Continental Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 772 (D. Md. 2008); *Kittitas Cty. v. Allphin*, 416 P.3d 1232, 1243 (Wash. App. 2018), *as amended* (June 18, 2018); *O'Boyle v. Borough of Longport*, 94 A.3d 299,

---

[2] Subsection (2) of section 87 further defines "work product" as consisting of two distinct types, "opinion work product" and "ordinary work product."

> (2) Opinion work product consists of the opinions or mental impressions of a lawyer; all other work product is ordinary work product.

Restatement § 87(2) (2000). The present case clearly involved opinion work product. Subsection 91 of the Restatement, however, does not distinguish between these two types of work product when discussing possible waivers of work product immunity.

313 (N.J. 2014); *Am. Zurich Ins. Co. v. Mont. Thirteenth Judicial Dist. Court*, 280 P.3d 240, 248 (Mont. 2012).

This test is appropriate under Pennsylvania law. Waiver of work product immunity should appropriately be limited in accordance with the purpose of its protections, which this Court described in the explanatory comment to Rule 4003.3 to be "to keep the files of counsel free from examination by the opponent[.]" Pa.R.C.P. 4003.3 Explanatory Comment – 1978. Whereas the attorney-client privilege is designed to protect confidentiality, the work product doctrine works to protect against disclosure to adversaries. *Id.* Section 91 of the Restatement appropriately limits instances of waiver in accordance with the essential purpose for providing the doctrine's protections – to keep the work product from adversaries in litigation.

For purposes of remand to the trial court, one refinement to the test for waiver of work product adopted here is in order. As described by the Majority, the test requires an analysis of whether the work product is "disclosed **in a manner** which significantly increases the likelihood that an adversary or potential adversary will obtain it." Majority Op. at 16 (emphasis added). As such, the manner of disclosure is an important consideration in applying the test, as disclosure must be effectuated by taking adequate precautions to ensure that the information cannot find its way into the hands of an adversary. As one federal court has keenly observed, "failure to take adequate precautions to prevent an adversary from obtaining work product information warrants waiver because '[i]ndifference to such a consequence indicates that protection of the immunity was not important to the person claiming the protection.'" *Continental*, 537 F. Supp. 2d at 772 (quoting Restatement § 91 comment b); *see also Chevron*, 633 F.3d at

165 (waiver occurs only when "the material is disclosed in a manner inconsistent with keeping it from an adversary"); *MIT*, 129 F.3d at 687 ("disclosing material in a way inconsistent with keeping it from an adversary waives work product material"); *O'Boyle*, 94 A.3d at 313) ("The inquiry invariably devolves to an examination of the nature of the disclosure itself.").

As a result, in applying the waiver test, the trial court will need to focus on whether Fedele, when disseminating outside counsel's work product to Cate, took any or all of the necessary and available precautions to reduce or eliminate the likelihood that the information could be obtained by Appellant, Dr. BouSamra.[3] The manner in which Fedele

---

[3] Respectfully, the emphasis on Fedele's actions does not, as the Majority contends, focus too heavily on the confidentiality of the documents or otherwise conflate the standards of confidentiality between the work product and attorney-client doctrines. Majority Op. at 19 n.9. To the contrary, it is the sin qua non of the waiver test that the Majority announces today. It should be self-evident that a test measuring whether information was "disclosed **in a manner** which significantly increases the likelihood that an adversary or potential adversary will obtain it" requires a principal (if not exclusive) focus on the **manner of disclosure** – namely, a careful analysis of the manner in which the work product was disclosed to third parties, including what precautions (if any) were taken to safeguard against the possibility that the information could fall into the hands of an adversary.

Also, I cannot agree with the generality of the Majority's contention that courts in other jurisdictions have held that "depending upon the facts of a given case," disclosing parties may have a reasonable basis to trust that the receiving party will not disseminate the material to others (even without instructions or a confidentiality agreement). *Id.* In the only case cited by the Majority, *United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010), the federal court of appeals there identified only one such "given case," specifically a circumstance in which the disclosing party and the recipient party have "common litigation interests." *Id.* at 141. According to the D.C. circuit court, "when common litigation interests are present, 'the transferee is not at all likely to disclose the work product material to the adversary.'" *Id.* (quoting *United States v. AT & T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). That court has defined "common litigation interests" to include those situations in which "transferor and transferee anticipate litigation against a common adversary on the same issue or issues." *AT & T*, 642 F.2d at 1300. No such situation would appear to be presented here, unless subsequent fact-finding discloses that Jarrard

disseminated the work product information will thus be an important, if not dispositive, consideration in deciding whether a finding of waiver is in order.

Justices Todd and Dougherty join this concurring opinion.

---

expected to be BouSamra's adversary in any future litigation related to the dispute between BouSamra and Excela.